UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MADISON/OHI LIQUIDITY INVESTORS, LLC, )
P.O. Box 7461 )
Incline Village, Nevada 89452, )
          Plaintiff, )
    v. )  Civil Action No. _____
OMEGA HEALTHCARE INVESTORS, INC., )  Honorable _____
900 Victors Way, Suite 350, )
Ann Arbor, Michigan 48108, )
          Defendant. )

## COMPLAINT

Plaintiff, Madison/OHI Liquidity Investors, LLC ("Madison"), for its Complaint against Omega Healthcare Investors, Inc. ("Omega") states as follows:

### THE PARTIES

1.    Defendant Omega is a Maryland corporation with its principal place of business in Michigan.

2.    Plaintiff Madison is a limited liability company organized under the laws of the State of Delaware. Madison's ultimate partners are citizens of Nevada, Connecticut, and/or states other than Maryland or Michigan.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the plaintiff and defendant and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391. Omega has its principal place of business in this district in Ann Arbor, Michigan.

## STATEMENT OF FACTS

5. Madison is in the business of acquiring investment securities. The founders and certain affiliates of Madison have been engaged in this business since 1995.

6. The parties entered into a Loan Agreement dated as of October 2, 1998 whereby Omega agreed to provide Madison a $30 million revolving credit facility (the "Loan Agreement") to enable Madison to make time-sensitive investments in various securities.

7. The Loan Agreement is a critical source of funding for Madison, and it is vital that Madison's funding requirements are met on a timely basis. Madison acquires its investment securities through transactions that are subject to Section 14e of the Securities Exchange Act of 1934 and the rules promulgated thereunder. Those rules obligate Madison, among other things, to pay for the investment securities promptly and to demonstrate adequate capitalization to fund its purchase obligations under such transactions. Thus, the parties agreed that "time is of the essence" with respect to funding and all provisions of the Loan Agreement.

8. Pursuant to the Loan Agreement, Omega agreed to provide Madison with funding for its investment activities by allowing for draws against the $30 million loan facility on a

revolving basis. The loan facility is secured pursuant to a security agreement. Madison is, and at all times has been, current in its payment obligations under the Loan Agreement.

9. Omega is required to fund, within the five (5) business day period set forth in the Loan Agreement, all of Madison's requests for draws if the request is for $500,000 or less with respect to any Investment Position (as defined in the Loan Agreement) and certain other conditions are satisfied. If a request is for a commitment in excess of $500,000 with respect to an Investment Position, Omega may refuse to fund by giving Madison notice within the four (4) business day period set forth in the Loan Agreement. If no such refusal is given to Madison prior to the expiration of such four (4) business day period, Omega is required to fund promptly all draw requests with respect to such Investment Position.

10. Omega and Madison have developed a course of conduct with respect to requests for loan draws that has worked smoothly and efficiently to ensure that Madison timely receives the funds it needs and that Omega's rights and security are protected. As part of this course of conduct and in connection with those commitments for which Omega's prior approval is required under the Loan Agreement, Madison regularly requests and, except as set forth below, receives Omega's approval, prior to the submission of a formal draw request. In reliance on these prior approvals, Madison proceeds with the acquisition of Investment Positions.

11. Commencing in approximately April 2000, Omega began to experience liquidity problems which, on information and belief, compelled it to undertake a recapitalization contingent upon obtaining new equity and debt funding for the company as well as stockholder approval for such recapitalization. In a telephone conversation on June 5, 2000, between a principal of Madison and Essel W. Bailey, Jr., the President and Chief Executive Officer of

- 3 -

Omega, Mr. Bailey stated that (a) Omega did not have the financial ability to honor its commitments under the Loan Agreement, and (b) the prospective funder of equity to Omega had encouraged Omega to sever its relationship with Madison.

12.     On May 23, 2000, Madison submitted a written request for a draw in the approximate amount of $1,100,000 for an Investment Position which had previously been approved by Omega (the "May 23 Draw"). In reliance on Omega's prior approval, Madison had made a binding commitment to the sellers to purchase the Investment Positions for which the May 23 Draw was requested.

13.     Despite its prior approval of the Investment Position to be acquired pursuant to the May 23 request, Omega refused to fund the May 23 Draw.

14.     In May 2000, Omega also advised Madison that Omega would not approve the acquisition of securities in two Investment Positions as to which Madison gave Omega prior notice. Under the Loan Agreement, Omega did not have the right to reject the acquisition of securities in these two Investment Positions because the amount projected to be drawn for each Investment Position would not exceed $500,000 and none of the other exceptions to funding was applicable (the "Draws as-of-Right").

15.     On information and belief, Omega's refusals of the May 23 Draw and the Draws as-of-Right were due to Omega's desire to curtail or terminate its obligations under the Loan Agreement.

16.     The Loan Agreement also provides that Madison may request draws for "payments or accruals to Affiliates [of Madison] of equitably allocated general and administrative costs and reimbursements to Affiliates [of Madison] of expenses initially defrayed

- 4 -

by Affiliates [of Madison] in respect of the acquisition of Investment Positions." In contravention of the Loan Agreement, Omega has consistently refused to fund draws in the aggregate amount in excess of $700,000 for such payments, accruals or expenses ("Overhead Expenses").

## COUNT I
## BREACH OF CONTRACT

17. The allegations of paragraphs 1 through 16 of the Complaint are incorporated as if fully set forth herein.

18. Omega is obligated to provide certain funding to Madison pursuant to the Loan Agreement.

19. A course of dealing has developed between the parties with respect to Omega's provisions of funding under the Loan Agreement.

20. Omega has breached the Loan Agreement by, among other things, failing to fund the May 23 Draw, rejecting the Draws as-of-Right, and by making certain demands upon Madison not required or permitted under the parties' agreement. Omega also has failed to fund Madison's Overhead Expenses as required by the Loan Agreement.

21. Madison has suffered and continues to suffer substantial damages in excess of $700,000 as a result of Omega's breaches of contract, including, but not limited to, lost investment opportunities and lost profits.

## COUNT II
## ANTICIPATORY BREACH - DAMAGES

22. The allegations of paragraphs 1 through 21 of the Complaint are incorporated as if fully set forth herein.

23.     On information and belief, Omega will continue to delay, deny, or seek to impose conditions on the provision of draws not permitted or required under the Loan Agreement and the course of dealing between the parties.

24.     Omega's conduct will hinder and delay Madison's ability to obtain funding critical to its business and constitutes an anticipatory breach of the Loan Agreement by Omega.

25.     Madison will suffer substantial damages which may exceed $16,000,000, in the event Omega fails to perform its funding obligations to Madison.

### COUNT III (in the alternative to Count II)
### ANTICIPATORY BREACH - SPECIFIC PERFORMANCE

26.     The allegations of paragraphs 1 through 21 of the Complaint are incorporated as if fully set forth herein.

27.     On information and belief, Omega will continue to delay, deny, or seek to impose conditions on the provision of draws not permitted or required under the Loan Agreement and the course of dealing between the parties.

28.     Omega's conduct will hinder and delay Madison's ability to obtain funding critical to its business and constitutes an anticipatory breach of the Loan Agreement by Omega.

29.     Madison will suffer substantial damages that may be difficult or impossible to quantify, but which may exceed $16,000,000, in the event Omega fails to perform its funding obligations to Madison. Madison has no adequate remedy at law.

WHEREFORE, Madison hereby prays that the Court enter judgment in favor of Madison and against Omega and:

(1)     Award Madison damages in an amount to be determined, but which is not less than $700,000 on Count I;

(2)     Award Madison damages in an amount to be determined, but which is not less than $16,000,000 on Count II;

(3)     In the alternative to an award of damages as to Count II, enter an order specifically enforcing the Loan Agreement and the course of conduct between the parties and compelling Omega to make loans to Madison and fund Madison's Overhead Expenses thereunder for the remaining term of the Loan Agreement;

(4)     Award Madison its costs and attorneys' fees; and

(5)     Award Madison such other and further relief as the Court deems just and proper.

Respectfully submitted,

BUTZEL LONG

By: _____
James E. Stewart (P23254)
David A. Gardey (P48990)
350 S. Main, Suite 300
Ann Arbor, MI 48104
(734) 213-3110

**SHAW PITTMAN**
Ralph A. Taylor, Jr.
Lori Vaughn Ebersohl
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000

**Attorneys for Plaintiff**

Dated: June 21, 2000